UNITED STATES

v.

**Specialist Five Elton HEWETT, 244–56–1888, U. S. Army, Headquarters and Headquarters Battery, 2d Battalion, 3d Field Artillery, 1st Brigade, 3d Armored Division, APO New York 09077.**

**SPCM 11434.**

U. S. Army Court of Military Review.

Sentence Adjudged 12 April 1975.

Decided 13 Jan. 1976.

Appearances: Appellate counsel for the Accused: CPT David J. Livingston, JAGC; CPT Theodore H. Watts, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC. Appellate counsel for the United States: CPT Clement L. Hyland, JAGC; CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

OPINION OF THE COURT

COOK, Judge:

The appellant was tried, by a judge sitting alone as a special court-martial, for numerous delicts all arising out of an epi-

sode aggravated by the appellant's excessive consumption of alcohol. The appellant plead guilty to some of the charges and not guilty to others. The trial judge's findings were in conformity with the pleas. Appellant was sentenced by the judge "to be reduced to the grade of private E–1, to forfeit $200.00 a month for six (6) months, to be discharged from the armed services of the United States with a bad conduct discharge and to attend one (1) weekly session or meeting of alcoholics anonymous such as may be conviently (sic) located to your duty station wherever that may be." In accord with the terms of a pretrial agreement, the convening authority approved the sentence set out in the heading, *supra.*

The question addressed by this opinion is the legality of that portion of the adjudged sentence which directs appellant to attend weekly meetings of Alcoholics Anonymous.

Article 19, 10 U.S.C. § 819, Uniform Code of Military Justice (UCMJ), and paragraph 15*b*, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev.)), both state that a special court-martial may, with certain exceptions, and under such regulations (limitations) as the President may prescribe, adjudge any punishment not forbidden by the Code. In at least two paragraphs of the Manual, courts are enjoined to "adjudge a legal, appropriate, and adequate punishment."[1] However, Article 56, UCMJ, repeats the qualification contained in Article 19 when it states that "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense."

In interpreting the cited laws, it has been held by this Court that the President's limiting authority under the Code extends not only to *quantities* but to *kinds* of punishment as well.[2] Ergo, as the President has not specified attendance at alcoholic rehabilitation or therapy meetings among the punishments enumerated in Chapter XXV, MCM 1969 (Rev.), such a sentence is not one which may be adjudged by a court-martial.[3] Although the trial judge's intentions in this instance were well meaning, courts-martial are creatures of the Uniform Code of Military Justice and personnel acting under the authority of that Code cannot exceed its terms. This is true even when those terms are enervating and frustrating. As "[a] decree which transcends limitations on court's fundamental power is void in criminal law,"[4] that portion of the trial judge's sentence in this case as directs the appellant "to attend one weekly session or meeting of alcoholics anonymous such as may be conveniently located to [his] duty station, wherever that may be" must be deemed void.[5]

There is a second aspect of the trial judge's conduct in this case which this Court finds disturbing. Prior to accepting the appellant's pleas of guilty the trial judge examined the terms of the pretrial agreement. Succinctly stated, those terms included an agreement by the convening authority to suspend any punitive discharge, any confinement, any reduction below grade E–4, and any forfeiture in excess of $200.00 per month for six months. Apparently, the trial judge was piqued by what he read because in a pre-announcement-of-sentence soliloquy he stated:

1. Paragraphs 76 and 125, MCM 1969 (Rev.).

2. *United States v. Laraway*, 30 C.M.R. 436 (A.B.R. 1960).

3. This Court is aware of the opinion in *United States v. Pleasants*, 46 C.M.R. 1294 (A.C.M.R. 1973), that "extra duty," though not enumerated in Chapter XXV, is an authorized sentence. While we express no opinion as to the correctness of that view, we do find that it has a tenable basis, because, as that opinion notes, "extra duty" is a punishment authorized by the UCMJ, albeit in Article 15, UCMJ. The sen-

tence here under discussion has no such sanctification.

4. *United States v. Calkins*, 20 C.M.R. 543 (N.B.R. 1956).

5. There are also practical considerations which dictate this result. Such a sentence may be nigh unenforceable. One possible problem is that Alcoholics Anonymous might refuse to admit to attendance an individual who was there under compulsion, as one of the organization's tenets is that the individual must voluntarily seek assistance before help can be effective.

"I was concerned when the court began to consider the appropriate sentence. I wondered why I was brought here in the first place. The pretrial agreement in this case clearly limits the immediate affect of any sentence that I might impose in this case."

Other comments of like purport are to be found in the trial judge's monologue.

■ While this Court has recently refused to find prejudice *per se* in a case in which the trial judge read the terms of a negotiated plea prior to sentencing,[6] it is clear from that decision, and the cases cited therein, that prejudicial error may result in such a situation. If the facts clearly reveal that a judge has abrogated his judicial responsibility to independently arrive at an appropriate sentence as a result of his exposure to the terms of a pretrial agreement, we would be compelled to take corrective action. Although the instant case is borderline, it does not appear to be fatally defective.

■ This Court feels compelled to address yet another matter involving the trial judge's demeanor at this trial which we feel evidences an unfortunate attitude. In one instance he insisted, on his own initiative, in rewriting certain terms of the pretrial agreement. The appellant and the convening authority had concurred, in writing, that upon the occasion of the trial judge's acceptance of appellant's plea of guilty to particular charges the convening authority would dismiss the others. However, on learning of this arrangement the trial judge observed,

"That means that I will not be afforded the opportunity, should I move in that direction of entering findings of 'Not Guilty', on those charges and specifications, concerning which the accused has pleaded that way. That procedure is something of which, I generally, do not agree with . . . In other words, Captain Hansen, rather than letting you

simply dismiss these remaining specifications and charges, if I find the accused guilty of those which he's pleaded to, and not guilty of the other ones, based upon lack of evidence, the government would not consider the agreement of no force in the fact.

.     .     .     .     .

The reason, of course, for that type of procedure is generally to prevent any reprosecution of dismissed charges, because of the rather arcane state of the law with respect to 'double jeopardy' and attachments . . . .''

Thereafter, the judge denied the government's motion to dismiss certain specifications and proceeded instead to enter a finding of not guilty as to those charges.

The procedure employed by the trial judge is not only contrary to the language of paragraph 71, MCM 1969 (Rev.), which is the sole authority for the entry of a finding of not guilty by a judge, but it is also a usurpation of the prerogatives conferred on the convening authority by paragraph 32*d*, MCM 1969 (Rev.). While innovative and imaginative actions by judges are commendable when required to protect the interests of accused, no such compulsion is evident in this case. Rather, the trial judge appears to have indulged his fancy in this instance to "prevent any re-prosecution of dismissed charges." The implication that someone in the military justice system would attempt to revive dismissed charges is an unwarranted affront. It is particularly reprehensible when the insinuation of bad faith originates with a judge, is expressed in open court and is spread on the record.

■ This judge's attitude was again manifested when, in announcing his sentence, he closed by saying,

"The court also recommends and would find it absurd if the government would not follow the recommendation that de-

---

6. *United States v. Morrell*, 2 M.J. 479 (A.C.M.R.1975).

fendant be transferred to another unit from that in which he is currently stationed."

Personnel transfers are administrative matters handled under different authority than the UCMJ and controlled by all manner of considerations, some of which are foreign to, and at times incompatible with, the objectives of courts-martial. A military judge should act with extreme caution before he makes such a recommendation in the presence of a defendant based solely on the circumscribed information made available to him during trial. The defendant could feel he has a vested right to such a transfer by virtue of the judge's remark, which, of course, is not correct. However, failure of the command to follow any recommendation made by a judge has a strong tendency to cast doubts on the vitality of the military justice system. Of course, the trial judge's characterization as "absurd" anyone who did not follow his recommendation is nothing short of unbridled arrogance.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, and that portion of the reduction to E–1 as is in excess of a reduction to the grade of E–4, suspended until 6 December 1975, and forfeiture of $200.00 pay per month for six months.

Senior Judge BAILEY and Judge De-FORD concur.